# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### TYLER DIVISION

| | | |
|---|---|---|
| **CLEAR WITH COMPUTERS, LLC,** | § | |
| | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **CASE NO. 6:09 CV 479** |
| **vs.** | § | |
| | § | |
| **HYUNDAI MOTOR AMERICA, INC.,** | § | |
| | § | |
| **Defendant.** | § | |

## MEMORANDUM OPINION AND ORDER

This opinion construes terms in U.S. Patent Nos. 5,615,342 and 7,606,739. Also before the Court is Hyundai Motor America, Inc.'s ("HMA") Motion for Partial Summary Judgment of Indefiniteness of Claims 1, 11, and 20 of U.S. Patent No. 7,606,739 (Docket No. 78). Having considered the parties' written and oral arguments, the Court **DENIES** HMA's motion for summary judgment.

## BACKGROUND

Clear with Computers, LLC ("CWC") asserts U.S. Patent Nos. 5,615,342 and 7,606,739 against HMA.[1] CWC, formerly Orion IP, LLC, previously asserted the '342 patent against an older version of HMA's websites in *Orion IP, LLC v. Hyundai Motor America*, Civil Action No. 6:05-cv-322 (the "*Orion v. Hyundai* case"). That case proceeded to trial, and the jury found that HMA's website did not infringe the '342 patent. Since that trial, HMA has modified its previously accused

---

[1] CWC also originally asserted U.S. Patent No. 5,367,627, but the Federal Circuit has recently invalidated that patent.

website, and CWC contends the redesigned website now infringes the '342 and '739 patents.

The Court has previously construed the '342 patent in *Orion IP, LLC v. Xerox Corp.*, Case No. 6:07-cv-138, Docket No. 805, August 21, 2008 (the "*Xerox* Opinion"); *Orion IP, LLC v. Staples, Inc.*, 406 F. Supp. 2d 717, 724 (E.D.Tex. 2005) Case No. 2:04-cv-297, Docket No. 307, December 15, 2005 (the "*Staples* Opinion"); and *Orion IP, LLC v. Hyundai Motor America*, Case No. 6:05-cv-322, Docket No. 488, April 10, 2007 (the "*Hyundai* Opinion").

CWC also currently asserts the '342 patent in *CWC v. Bassett Furniture Industries, Inc.*, Case No. 6:09cv95, and *CWC v. Hyundai Construction Equipment, Inc.*, Case No. 6:09cv139. Those cases have been consolidated into *CWC v. Bergdorf Goodman, Inc.*, Case No. 6:09cv481. Although the Court held a combined *Markman* hearing with these cases and the *HMA* case, only a few terms overlap between the cases and the Court will issue a separate opinion in the *Berdorf* case.

The patents generally describe an electronic system for creating customized product proposals. The system queries a user to determine a customer's needs and interests and then uses stored pictures and text segments to create a customized proposal that appeals to the customer. The '739 patent, not previously asserted, is a continuation from the '342 patent.

## APPLICABLE LAW

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting *Innova/Pure Water Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). In claim construction, courts examine the patent's intrinsic evidence to define the patented invention's scope. *See id.*; *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 861 (Fed. Cir. 2004); *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Group, Inc.*,

262 F.3d 1258, 1267 (Fed. Cir. 2001). This intrinsic evidence includes the claims themselves, the specification, and the prosecution history. *See Phillips*, 415 F.3d at 1314; *C.R. Bard, Inc.*, 388 F.3d at 861. Courts give claim terms their ordinary and accustomed meaning as understood by one of ordinary skill in the art at the time of the invention in the context of the entire patent. *Phillips*, 415 F.3d at 1312–13; *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368 (Fed. Cir. 2003).

The claims themselves provide substantial guidance in determining the meaning of particular claim terms. *Phillips*, 415 F.3d at 1314. First, a term's context in the asserted claim can be very instructive. *Id*. Other asserted or unasserted claims can also aid in determining the claim's meaning because claim terms are typically used consistently throughout the patent. *Id*. Differences among the claim terms can also assist in understanding a term's meaning. *Id*. For example, when a dependent claim adds a limitation to an independent claim, it is presumed that the independent claim does not include the limitation. *Id*. at 1314–15.

"[C]laims 'must be read in view of the specification, of which they are a part.'" *Id*. (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc)). "[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Id*. (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)); *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002). This is true because a patentee may define his own terms, give a claim term a different meaning than the term would otherwise possess, or disclaim or disavow the claim scope. *Phillips*, 415 F.3d at 1316. In these situations, the inventor's lexicography governs. *Id*. Also, the specification may resolve ambiguous claim terms "where the ordinary and accustomed meaning of the words used in the claims lack sufficient clarity to permit the scope of the claim to be

ascertained from the words alone." *Teleflex, Inc.*, 299 F.3d at 1325. But, "'[a]lthough the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims.'" *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998) (quoting *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988)); *see also Phillips*, 415 F.3d at 1323. The prosecution history is another tool to supply the proper context for claim construction because a patent applicant may also define a term in prosecuting the patent. *Home Diagnostics, Inc., v. Lifescan, Inc.*, 381 F.3d 1352, 1356 (Fed. Cir. 2004) ("As in the case of the specification, a patent applicant may define a term in prosecuting a patent.").

Although extrinsic evidence can be useful, it is "'less significant than the intrinsic record in determining the legally operative meaning of claim language.'" *Phillips*, 415 F.3d at 1317 (quoting *C.R. Bard, Inc.*, 388 F.3d at 862). Technical dictionaries and treatises may help a court understand the underlying technology and the manner in which one skilled in the art might use claim terms, but technical dictionaries and treatises may provide definitions that are too broad or may not be indicative of how the term is used in the patent. *Id*. at 1318. Similarly, expert testimony may aid a court in understanding the underlying technology and determining the particular meaning of a term in the pertinent field, but an expert's conclusory, unsupported assertions as to a term's definition is entirely unhelpful to a court. *Id*. Generally, extrinsic evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms." *Id*.

### '342 PATENT

**User**

HMA contends "user" should be construed as "the person who receives answers from the

customer and, based on those answers, uses the computer to generate the customized proposal." CWC argues the term does not require construction.

In previously construing "customer," the Court identified separate roles for the user of the computer and the customer but also stated that the same person could perform both roles. *Staples* Opinion at 6. HMA seeks reconsideration of the Court's decision for the reasons stated in its *Markman* brief in the *Orion v. Hyundai* case.

The Court correctly construed this term in the previous cases. HMA's proposed construction improperly limits the claims to the preferred embodiment, where the roles of the user and customer are fulfilled by different individuals. For the reasons given in the earlier cases, this term does not require construction.

**environment/ product environment picture**

HMA contends that "environment" and "product environment picture" mean "a real-world setting of potential interest to a customer, and therefore not including a blank, solid-colored, shaded or patterned backdrop." CWC contends that these terms do not require construction or, if they do require construction, that they be given their plain and ordinary meaning.

Previously, the Court did not construe these terms in light of Orion/CWC's statement that it would not argue such things are backgrounds. HMA argues these terms need construction because a jury may not understand that these things are not backgrounds. HMA is improperly attempting to inject a non-infringement position into claim construction. HMA is free to ask CWC's expert at trial if such backgrounds can be an environment. Moreover, given CWC's stipulation on the issue, HMA can move for summary judgment on this ground if it really is at issue. HMA has not otherwise shown why these terms need construction. Accordingly, the Court declines to construe the terms as

they have an ordinary meaning that does not otherwise appear to be disputed.

**Selecting**

HMA proposes this term be construed as "choosing from multiple options." CWC contends that this term does not require construction or, if the term does require construction, that it be given its plain and ordinary meaning. HMA argues that "selecting" entails choosing one of a plurality of items and the patentee never used "selecting" to mean linking to a predetermined item. HMA contends that its proposed construction does not require that product pictures, product environment pictures, and text segments be stored separately—a limitation this Court has rejected in previous cases—only that there be multiple options to choose from.

CWC argues that HMA is trying to introduce a "separate and distinct" limitation, which the Court rejected in previous cases. The Court previously held that claim language does not require that product pictures, product environment pictures, and text segments be stored separately. CWC agrees that in the preferred embodiment, the system chooses from multiple environments, product pictures, and text, but argues the claim language does not require that multiple options be present and there may be only one option to choose from.

This term does not require construction. HAM's proposed construction rests on a view that the specification disclaims a single option embodiment. However, neither the term itself nor the specification directs a "multiple option" requirement. Accordingly, HMA's proposed construction is overly limiting, and the Court does not adopt it.

**Selecting a particular product picture in response to at least one of the customer answers; selecting a particular product environment picture in response to at least one of the customer answers; selecting a particular text segment in response to at least one of the customer answers**

HMA proposes that the "selecting" phrase means "separately selecting by a computer system

6

and in response to at least one customer answers, at least three separate items: (1) a particular product picture, (2) a particular picture of an environment, and (3) particular text." CWC contends the phrase does not require construction. The Court previously said these terms do not require construction because "the claim language is sufficiently clear that a particular product picture, a particular product environment picture, and a particular text segment are selected in three separate steps." *Xerox* Opinion at 6–7; *Staples* Opinion at 24.

HMA argues the Court rejected the proposed constructions in the earlier cases because they added additional limitations, which HMA's construction does not do. HMA contends the construction is necessary to avoid jury confusion. HMA contends that not construing this term at the earlier trial did create confusion, causing the Court to have a lengthy sidebar with the attorneys, Orion to take a witness on voir dire, and the Court to reaffirm from the bench its construction.

CWC contends HMA's proposal is an attempt to incorporate a multiple option requirement, as described in the term "selecting" above.

As the Court has previously stated, the claim language is clear on its face that a particular product picture, product environment picture, and text segment are selected in three separate steps. *See Xerox* Opinion at 6–7; *Staple*s Opinion at 24. The events of the earlier trial do not demonstrate a need to further construe the term. After hearing the parties' arguments outside the jury's presence, no further construction of the term was necessary, and the Court merely reaffirmed its previous construction. Transcript May 25, 2007, 103:16–18 (Docket No. 583). As the claim language is clear and there is no actual claim scope dispute, these terms do not require a construction.

**Proposal**

CWC and HMA both agree "proposal" should be construed as it was in the prior cases,

"information intended for conveyance to a potential customer." The Court adopts this construction.

## '739 PATENT

**Select/ selecting/ selects**

As with the '342 patent, CWC contends that no construction is necessary, while HMA argues the terms mean "choos[ing, s] from multiple options." CWC argues that the claims contemplate there may be only one item to select and HMA's construction requires the jury to identify a set of options that can be chosen. HMA contends that its construction is consistent with the plain and ordinary meaning and that the purpose of the selection is to identify preferences and choose images and data that comport with those preferences.

HMA's proposed construction overlooks that the computer system is making an automatic "selection" in response to customer answers. The customer chooses from among various options, and the computer system acts on the customer's selection inherent in the customer's answer to retrieve the particular item that corresponds to the customer's answer. The claim language does not proscribe an embodiment where there is a one-to-one correspondence of an answer and an environment image. For example, while multiple environment pictures may all reside in the database, when the system "selects" one of them it is not choosing among multiple options because the customer answer is directing which image to pull from the database. Accordingly, the Court does not adopt HMA's construction. Having resolved the parties' dispute, the term does not require further construction.

**Select[ing, s] . . . an image of the tangible product for sale, an image of an environment in which the product for sale is to be used and a text segment comprised of a description of the product specifications and performances**

CWC argues this term does not require construction. HMA contends it should be construed

as "select[ing, s] by a computer system at least three separate items: (1) a tangible product for sale, (2) an environment image in which the product for sale is to be used, and (3) a text segment comprised of a description of the product specifications and performances."

As discussed earlier, the Court previously clarified that in the '342 patent this step requires three separate selections in three steps. The parties' arguments here are the same as those for the '342 patent. CWC also argues that HMA's construction might lead jury to believe that only "clean" images must be selected, and product pictures with some environment or environment pictures with some product must be excluded. The parties do not dispute that three separate items must be selected in three steps. For the same reasons as stated for the '342 patent above, this phrase does not require construction.

**single composite visual output** and **single composite customized visual output** and **customized visual output**

These terms are not used in the '342 patent claims. CWC contends the terms should be construed as "a single image that includes the selected text and an image of a product in a product environment." HMA contends the terms mean " a product image and an environment image, the product image superimposed over the environment image to form a single image, accompanied by text."

CWC argues that HMA's proposed construction is improper because the Court previously rejected a "superimposed" limitation as to the '342 patent. HMA contends that its construction is required by the claim language and the '342 and '739 patents have different claim scope, making the Court's earlier rejection of "superimposed" irrelevant.

HMA's construction is too narrow. HMA's proposed construction goes beyond what the

term means and imposes a limitation as to how the claim element is created.  The claim requires a "composite" visual output.  A superimposed image is one way to create a "composite" visual output, but "composite" is much broader than "superimposed."  CWC's construction gives the terms the full breadth of their meaning.  Accordingly, the Court construes the terms as "a single image that includes the selected text and an image of a product in a product environment."

**integrat[e/ing/es] the selected images and the selected text segment into . . . a single customized composite visual output**

CWC contends this term does not require a construction.  HMA contends it should be construed as "combin[e/ing/es] the separately selected product image, product environment image, and text segment into a single composite visual output" but does not provide any briefing to support its construction.  As HMA has given no support for its construction, the Court does not adopt its proposed construction.  This term does not require a construction.

**proposal for the sale of the product customized to the specific customer**

CWC contends that since the Court has already construed "proposal," this phrase does not require construction.  HMA argues the term should be construed as "a proposal setting forth terms, as determined by customer answers, for the sale of a particular product."

HMA argues that claim 1 puts two limitations on "proposal": it must be "customized to the specific customer" and it must be "for the sale" of "the product."  However, HMA's construction requires that terms of the sale be included in the proposal.  While the specification does contemplate that pricing information may be included in the proposal, *see* '739 patent at 2:31–35, it does not require that terms of a sale be a part of the proposal.  Moreover, the meaning or scope of "terms" is ambiguous.  This limitation is not warranted by the claims or specification.  The remainder of

HMA's construction only restates the claim language. As the claim language is sufficiently clear as it is written, no further construction is necessary.

**database** and **static database** and **active database**

The '739 patent claims describe both an active database and a static database. Claim 1 requires an "active database configured to electronically store customer information obtained via the user interface" and a "static database storing electronically at least one of, (a) text; (b) pictures or (c) texts and pictures, relating to at least one product." CWC and HMA dispute the meaning of both terms and whether "database" itself requires construction.

### *database*

CWC contends "database" does not require construction apart from the constructions of "active database" and "static database." Alternatively, CWC contends the Court should construe "database" as an "organized collection of data." CWC also alternatively contends the Court should construe "database" as it did in an unrelated case: "a collection of logically related data stored together in one or more computerized files." *See Soverain Software LLC v. Amazon.com, Inc.*, 2005 WL 6225276, 6:04cv14, Docket No. 246 at 18 (E.D. Tex. April 7, 2005) (Davis, J.). HMA argues "database" means "a collection of logically related data stored together in one or more computerized files and organized in a manner that facilitates searching and retrieval of data objects."

CWC's proposed construction, an "organized collection of data," is far too broad. HMA agrees that the Court's previous construction, "a collection of logically related data stored together in one or more computerized files," is correct but contends that it must be augmented to account for the term's use in the '739 patent. HMA contends that as described in the '739 patent, "database" stores data electronically and permits the system to select particular stored data and retrieve that data.

11

To this end, HMA adds to the Court's prior construction "and organized in a manner that facilitates searching and retrieval of data objects." This additional limitation describes common aspects of a database and does more than merely account for the function and role of the database that are described in the specification. HMA's additional limitation is not justified. Accordingly, the Court construes "database" according to its ordinary meaning in the art: "a collection of logically related data stored together in one or more computerized files."

### static database

CWC proposes that "static database" be construed as an "organized collection of product information and images." HMA contends it means "a database that is not alterable based on customer answers about features or uses."

CWC's construction reads out the "static" limitation and gives no meaning to it. In contrast, HMA's construction, which would not allow the static database to be altered, is overly limiting. The specification describes that the contents of the static database "preferably cannot be altered by the user" but "[c]hanges to the static database 105 may be distributed to some or all of the users of this application on either optical or magnetic media." '739 patent at 8:11–15. The database is "static" in the sense that it is not altered while the customized proposal is being created. Both parties ignore this temporal aspect of the static database. Accordingly, the Court construes "static database" as "a database that is not alterable during generation of a composite visual output."

### active database

CWC contends the "active database" is "a database that is alterable based on user input." HMA contends that it is "a database that is alterable based on customer answers." The parties agree that the active database is alterable, but dispute whether it is altered based on the user's input or the

customer's answers.

HMA frames the issue as "whose inputs can alter the database, the user's or the customer's." HMA's *Markman* Brief, Docket No. 77 at 17 of 25. HMA contends it is the customer's inputs that alter the active database. However, the claim language describes the active database as "configured to electronically store customer information obtained via the *user* interface." Moreover, the specification describes information that is not based on the customer's answers to questions as being stored in the active database. *See* '739 patent at 7:21–24, 9:19–23, 11:18–24. Accordingly, HMA's construction is too limiting, and the Court construes "active database" as "a database that is alterable based on user input."

**environment** and **product environment**

CWC contends these terms do not require construction. HMA argues they should be construed as "a real-world setting of potential interest to a customer, and therefore not including a blank, solid-colored, shaded or patterned backdrop."

HMA's only argument in support of its proposed construction is that it will avoid jury confusion. However, HMA's negative limitation is not likely to avoid jury confusion and may create some confusion. For the reasons stated with regard to the '342 patent, this term does not require construction.

**dynamically building a template**

The last step of claim 1 is "the system dynamically building a template utilizing the selection device to fill in the template to produce the single composite visual image." CWC argues "dynamically building a template" means "constructing a template that may be modified to fit selected images and text." HMA contends it means "using the customer's answers from the active

13

database to construct a template capable of being filled in with data." At the heart of the parties' dispute is whether "building" the template is the process of filling a template with data or constructing a template and then filling it with data. The parties also dispute whether "dynamically" precludes the use of pre-stored templates.

HMA's construction requires a template to be constructed, which could be filled in with data. HMA's reading of the claim language inserts an "and" into the claim language that is not there or implied: "the system dynamically building a template [*and*] utilizing the selection device to fill in the template to produce the single composite visual image." However, that "and" does not exist in the claim language. The plain reading of the claim language is that "utilizing the selection device to fill in the template" describes or modifies "dynamically building a template." Thus, a template is dynamically built by utilizing the selection device to fill in the template. This is consistent with the specification, which describes that the combination of pictures for a finished template does not need to be pre-stored because the system dynamically builds the template. '739 patent at 5:30–32. HMA contends this step precludes the use of "pre-stored" templates. However, whether "pre-stored" satisfy this limitation is an infringement determination that should be made by a jury. Accordingly, the Court construes "dynamically building a template" as "constructing a template that may be modified to fit selected images and text."

**selection device**

CWC contends "selection device" means "software that receives user inputs and in response initiates actions within the system." HMA contends the term is a means-plus-function term under 35 U.S.C. §112 ¶6 but the specification fails to recite sufficient structure and the term is therefore indefinite. "Selection device" is used in independent claims 1, 11, and 20. As to the "selection

device," claim 1 recites:

> wherein the single composite visual output is generated by:
> a selection device operatively interconnected to an active database, the active
> database configured to electronically store customer information obtained via
> the user interface;
> the selection device operatively connected to a static database, the static database
> storing electronically at least one of, (a) text; (b) pictures or (c) texts and
> pictures, relating to at least one product; and
> the system dynamically building a template utilizing the selection device to fill in the
> template to produce the single composite visual output.

'739 patent at 39:38–49.

The use of the term "means" in a claim limitation raises a rebuttal presumption that the claim limitation is a means-plus-function limitation governed by 35 U.S.C. § 112 ¶ 6. *Kemco Sales, Inc. v. Control Papers Co.*, 208 F.3d 1352, 1361 (Fed. Cir. 2000). If the claim limitation recites sufficient structure to perform the recited function, the presumption has been overcome and 35 U.S.C. § 112 ¶ 6 does not govern the claim limitation. *Id.* Similarly, 35 U.S.C. § 112 ¶ 6 does not govern a claim limitation if the limitation does not sufficiently connect a "means" to a recited function. *York Prods., Inc. v. Cent. Tractor Farm & Family Ctr.*, 99 F.3d 1568, 1574 (Fed. Cir. 1996); *Wenger Mfg., Inc. v. Coating Sys., Inc.*, 239 F.3d 1225, 1236 (Fed. Cir. 2001). Courts evaluate whether a claim limitation falls within the ambit of 35 U.S.C. § 112 ¶ 6 from the perspective of one of ordinary skill in the art. *Apex Inc. v. Raritan Computer, Inc.*, 324 F.3d 1364, 1374 (Fed. Cir. 2003); *see also Phillips*, 415 F.3d at 1312–13.

Although the claims do not use the word "means," HMA contends that the term "selection device" does not connote sufficiently definite structure to take the limitation outside of section 112, paragraph 6. HMA relies on *The Massachusetts Institute of Technology v. Abacus Software*, 462 F.3d 1344 (Fed. Cir. 2006), in which the Federal Circuit held the term "colorant selection

mechanism" to be a means-plus-function limitation. HMA argues that the claims specify that the "selection device" is being utilized "to fill in the template." According to HMA, that recitation is tantamount to the functional claiming of "for filling in the template." HMA also contends that CWC fails to identify any link in the specification between the selection device and the function of filling in the template and that CWC fails to identify an algorithm capable of filling in the template.

The threshold showing that "selection device" is being invoked for purposes of functional claiming is absent. Contrary to HMA's arguments, *Abacus* is not controlling. The claim at issue in *Abacus* was as follows:

> 1. A system for reproducing a color original in a medium using a selected multiplicity of reproduction colorants, the system comprising in serial order:
> a. a scanner for producing from said color original a set of three tristimulus appearance signals dependent on the colors in said original;
> b. display means connected to the scanner for receiving the appearance signals and aesthetic correction circuitry for interactively introducing aesthetically desired alterations into said appearance signals to produce modified appearance signals; and
> c. colorant selection mechanism for receiving said modified appearance signals and for selecting corresponding reproduction signals representing values of said reproducing colorants to produce in said medium a colorimetrically-matched reproduction.

*Abacus*, 462 F.3d at 1348.

The claim in *Abacus* was directed to a system having three, standalone, although interconnected, structural elements. No framework for a structural identity of the "color selection mechanism" was either inherent in the term or elsewhere in the claim recitations. Thus, in evaluating the manner of use of the term in the claimed combination the Federal Circuit concluded that functional claiming was being invoked and section 112, paragraph 6, applied.

In contrast to *Abacus*, claim 1 of the '739 patent specifies in its preamble "a computer

program product . . . comprising instructions that when executed . . . ." At the outset, the claimed subject matter of claim 1 is identified as comprising instructions that one of skill in the art would understand to be computer code. Claim 1 specifies that the computing system, while executing the instructions builds a template and uses the "selection device" to fill in the template. The claim language places the "selection device" among the instructions being executed by the processor to generate the single composite visual output. Thus, "selection device" is a computer code data structure. Claim 2 lends support for this understanding by reciting the addition of "instructions to cause the processor to output the single composite visual output [generated by the selection device] to a user . . . ." '739 Patent at 39:50-53.

Claim 11, a method claim, similarly specifies use of a computer system, which would include both hardware and software, in generating a customized visual output. In claim 11, the "selection device" is operable within the system and generates the customized visual output. The steps of "receiving from a user interface," "automatically selecting," and "integrating the selected images" would be understood by one of skill in the art to be computer system operations performed under the direction of a program of computer instructions. The "selection device" would also be understood to be among the program of computer instructions forming the computer system. Thus, "selection device" is a computer code data structure.

Claim 20 is directed to a computer system for generating a customized proposal. Claim 20 sets forth hardware elements and the "selection device." Inherent in the recited operations of the user interface and processing system is a program of computer instructions. The "selection device" would also be understood to be among the program of computer instructions forming the user interface and processing system. Thus, "selection device" is a computer code data structure.

The '739 patent specification references "selection device 101." One instance is in regard to Fig. 18 described as an object diagram of flow control. As described in the '739 patent, the computer system uses Object Oriented Design as the programming method. In object oriented programming, data structures (datafields and methods), referred to as "objects," establish the behavior of the system. An object diagram, such as that including "selection device 101," describe the interaction of the objects (software elements). *See generally*, '739 patent at 4:27-52. The specification supports an understanding that "selection device" is a computer code data structure, which is preferably an object oriented programming data structure known as an "object." Accordingly, when "selection device" is read in view of the specification, one of skill in the art would understand it to be a computer code data structure. Computer code and data structures are understood to connote structure and exclude the term "selection device" from application of section 112, paragraph 6. *See Aloft Media, LLC. v. Adobe Systems, Inc.*, 570 F. Supp. 2d 887 (E.D. Tex. 2008). Accordingly, the Court **DENIES** HMA's motion for summary judgment of indefiniteness and construes "selection device" as "computer code data structure."

## CONCLUSION

For the foregoing reasons, the Court interprets the claim language in this case in the manner set forth above. For ease of reference, the Court's claim interpretations are set forth in a table as Appendix A. The Court **DENIES** HMA's motion for summary judgment.

**So ORDERED and SIGNED this 5th day of January, 2011.**

**LEONARD DAVIS**
**UNITED STATES DISTRICT JUDGE**

**U.S. PATENT NO. 5,615,342**

| Claim Term/Claim Language | Court's Construction |
|---|---|
| **"selecting"** <br> Claim 1, 11 | No construction |
| **"selecting a particular product picture . . . selecting a particular product environment picture . . . selecting a particular text segment . . ."** <br> Claim 1, 11 | No construction |
| **"environment" / "product environment [pictures / image]"** <br> Claim 1, 11 | No construction |
| **"user"** <br> Claim 1, 11 | No construction |
| **"proposal"** <br> Claim 1, 11 | information intended for conveyance to a potential customer |

**U.S. PATENT 7,606,739**

| Claim Term/Claim Language | Court's Construction |
|---|---|
| **"select" / "selecting" / "selects"** <br> Claim 1 | No construction |
| **"select[ing / s] . . . an image of the tangible product for sale, an image of an environment in which the product for sale is to be used and a text segment comprised of a description of the product specifications and performances"** <br> Claim 1, 11, 20 | No construction |
| **"single composite visual output" / "single composite customized visual output" / "customized visual output"** <br> Claim 1, 11, 20 | a single image that includes the selected text and an image of a product in a product environment |
| **"integrat[e / ing / es] the selected images and the selected text segment into . . . a single customized composite visual output"** <br> Claim 1, 11, 20 | No construction |
| **"proposal for the sale of the product customized to the specific customer"** <br> Claim 1, 11, 20 | No construction |
| **"static database"** <br> Claim, 1, 11, 20 | a database that is not alterable during generation of a composite visual output |

| Claim Term/Claim Language | Court's Construction |
|---|---|
| **"active database"**<br>Claim 1, 11, 20 | a database that is alterable based on user input |
| **"environment" / "product environment"**<br>Claim 1, 11, 20 | No construction |
| **"database"**<br>Claim 1, 11, 20 | a collection of logically related data stored together in one or more computerized files |
| **"dynamically building a template"**<br>Claim 1, 11, 20 | constructing a template that may be modified to fit selected images and text |
| **"selection device"**<br>Claim 1, 11, 20 | computer code data structure |