# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | |
|---|---|
| CLEAR WITH COMPUTERS, LLC, | § |
| Plaintiff, | § |
| vs. | §  CASE NO. 6:09 CV 479 |
| HYUNDAI MOTOR AMERICA, INC., | § |
| Defendant. | § |

## MEMORANDUM OPINION AND ORDER

At the pretrial hearing, the Court orally denied HMA's motion for summary judgment of non-infringement (Docket No. 192). The Court took CWC's cross motion for summary judgment re: no divided infringement (Docket No. 201) under advisement and later granted the motion. Docket No. 320. The day before trial was to start, HMA filed a request to clarify the Court's ruling on those motions. Docket No. 328. The Court heard arguments before voir dire on the request for clarification and orally gave the parties guidance on the issue. This opinion memorializes the Court's reasoning.

## BACKGROUND

Clear with Computers asserts U.S. Patent No. 7,606,739 against Hyundai Motor America, Inc. ("HMA"). The '739 patent generally discloses "an electronic system for creating customized product proposals [that] stores a plurality of pictures and text segments to be used as building blocks in creating the proposal." '739 patent, Abstract. CWC contends HMA's website www.hyundiausa.com infringes computer code product claims 1, 7, 8, and 9 and method claims 11,

1

17, 18, and 19 of the '739 patent.[1] HMA contends that it cannot infringe the '739 patent because (1) some of the allegedly infringing actions are performed by the computers of users who log on to the accused site and (2) other allegedly infringing actions are performed by third-party web providers and HMA does not control the users' computers or the third-party's servers.

Exemplary claim 1 of the '739 patent requires:

> A computer program product readable by a computing system comprising instructions that when executed cause a processor to:
> receive answers to a plurality of questions from a specific customer related to at least one of a desired feature and desired use by the customer of a tangible product for sale from a user interface;
> automatically select, in response to at least one of the received answers, an image of the tangible product for sale, an image of an environment in which the product for sale is to be used and a text segment comprised of a description of the product specifications and performances that are of particular interest to the customer; and
> integrate the selected images and the selected text segment into a proposal for the sale of the product customized to the specific customer such that a single composite visual output can be generated that shows the product in the product environment along with said text segment,
> wherein the single composite visual output is generated by:
> a selection device operatively interconnected to an active database, the active database configured to electronically store customer information obtained via the user interface;
> the selection device operatively connected to a static database, the static database storing electronically at least one of, (a) text; (b) pictures or (c) texts and pictures, relating to at least one product; and
> the system dynamically building a template utilizing the selection device to fill in the template to produce the single composite visual output.

## SUMMARY JUDGMENT STANDARD

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

---

[1] CWC alleges only direct infringement. As CWC stated at the pretrial hearing, it does not allege indirect, joint, or induced infringement.

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). An issue of material fact is genuine if the evidence could lead a reasonable jury to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue for trial exists, the court views all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Id*.; *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 587 (1986).

## APPLICABLE LAW

To infringe, a defendant must practice each and every claim element. *BMC Res., Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1380 (Fed. Cir. 2007). One party can be vicariously liable for the acts of a second party when the first party controls the conduct of the second. *Id*. at 1379. Thus, a defendant cannot avoid liability for infringement by having another party carry out claimed steps on its behalf. *Id*.

## ANALYSIS

**User's Computers**

HMA argues that even if the '739 patent's claims were drafted so that they could be infringed by a single entity, HMA does not infringe the claims because HMA does not perform each of the claim elements itself. HMA contends that the "composite visual output," "user interface," and "filling in the template" limitations[2] are all performed or met by the user or the user's computer, which are not under HMA's control.

---

[2] Although HMA's brief raises the user interface and filling in the template limitations, the briefing was primarily focused on the composite visual output limitation.

CWC argues that the user's computer does not perform any steps actually required by the claims, therefore there is no divided infringement issue as to the users. CWC contends that HMA's arguments import claim limitations that are not present in the claims.

HMA's arguments misread the claim limitations. HMA contends that because the single composite visual output is displayed on the user's computer, the user's computer—and not a computer under HMA's control—must perform the limitation of generating the composite visual output. However, the claim language makes clear that the single composite visual output is generated by the selection device. *See* claim 1 at 39:39. The Court's claim construction opinion also makes clear the selection device is "computer code data structure." Docket No. 143 at 14–18. HMA acknowledges that the necessary code to display the composite visual output is sent to a user's computer. *See* HMA's Opposition to CWC's MSJ, Docket No. 213 at 5. That the user's computer uses the code it receives to display the composite visual output is irrelevant to infringement because displaying the composite visual output is not a required claim element. Similarly, the claim language makes clear the selection device fills in the template. *See* claim 1 at 39:47–49 ("building a template utilizing the selection device to fill in the template to produce the single composite visual output"). Thus, these elements are not met by the user or the user's computer.

Finally, HMA contends "[i]t is the user's computer monitor, mouse, and keyboard that compose the user interface." HMA MSJ, Docket No. 192 at 9.[3] In contrast, the specification teaches

---

[3] To support this argument, HMA cites the following deposition exchange of James Cisneros:
3 Q What Partners does is a computer-to-computer
4 interface -- right? -- so that you are serving technical
5 information through the Internet, but there's nothing
6 that you do that involves the use of a user interface?
7 A No.
8 Q That's correct?

> [t]he user interface 102 is the means by which the user may interactively input predetermined answers to predetermined queries, the predetermined answers corresponding to the individual customer who is to receive the proposal.
> Referring now to FIG. 2 in combination with FIG. 7 and FIG. 16, the user interface 102 typically comprises a collection of Form objects 118 which present a series of predetermined queries related to the varying interests of the different potential customers. . . .

'739 patent at 8:43–51. Thus, the specification does not support HMA's contention that the user interface is "the user's computer monitor, mouse, and keyboard." HMA's proffered evidence fails to support its position as well. Moreover, HMA has failed to seek any formal construction of this term. As with the composite visual output and filling in the template limitations, HMA seeks to import limitations into this term that are not required by the claims.

The claims do not require user actions, nor has HMA shown that any claim limitations are met by the user rather than HMA. Accordingly, CWC is entitled to summary judgment on HMA's arguments regarding divided infringement as to a user.

**Third-Party Companies**

Hyundai Information Service North America ("HISNA") provides HMA's website support. HISNA was originally HMA's internal information technology department but was subsequently formed as a separate company. HISNA contracts with Partners Consulting Services, Inc. and Akamai Technologies, Inc. to host and deliver HMA's website content.[4]

---

9 A That is correct. I'm sorry.

This testimony does not in any way support HMA's position. Notably, this definition of user interface is different than that used by HMA's Rule 30(b)(6) witness, McLeod: "Generally speaking, any user interface is something that's displayed that gives a user the ability to interact." *See* Docket No. 202-5 at 117:19–21.

Another of HMA's designees testified that to him a user interface is "a website you can enter, like you click the user interface" and further testified that the main HyundaiUSA.com web page was a user interface. Docket No. 202-4 at 134:2–5; 15–18.

[4] Partners Consulting hosts the website, and Akamai caches some content to allow for quicker web browsing.

HMA argues that HMA does not own or operate any of the servers on which the accused websites are hosted. HMA contends that every infringing act that is not performed by the user takes place on servers that are not owned, operated, or controlled by HMA. These servers are owned and operated by third parties Partners Consulting and Akamai. HMA argues that another third party, HISNA, which is a separate entity from HMA and not HMA's agent, entered into contracts with Partners Consulting and Akamai to provide the server services.

CWC contends that HMA directs and controls the actions relevant to the asserted claims, including the website's content, operation, and the information that is delivered. Citing *BMC Resources*, CWC argues that HMA should not be able to "avoid infringement . . . simply by contracting out steps of a patented process to another entity. *See BMC Res.*, 498 Fed. Cir. at 1381. According to CWC, such a policy would create a safe-harbor from direct infringement for nearly all web-based activities.

CWC presented overwhelming evidence that HMA controls the accused website's content, which contains the code that allegedly implements the claims. CWC presented the deposition of Mr. McLeod, HMA's Rule 30(b)(6) witness. Docket No. 202-5 at 16:15–17; 17:3–6. McLeod is a HISNA employee in charge of essentially all technical aspects of the accused website. *Id.* at 49:22–24; 51:24–53:1. McLeod testified that the site had been redesigned to allow HMA's marketing department to put content into the site. *Id.* at 53:6–8. McLeod further testified that Hyundai's marketing department controls the approval process for any new code or content to the accused website. *Id.* at 102:23–103:23. In interrogatory responses, HMA admitted it controls the content of the accused sites. Docket No. 202-3 at 3 ("Hyundai provides content for Hyundaiusa.com and other accused websites."). Another of HMA's designees—also a HISNA employee—testified

that HMA, not HISNA is responsible for the accused website's content. Deposition of Duy Ton, Docket No. 202-4 at 26:11–27:15; 31:2–18. Finally, James Cisneros, a Partners Consulting employee, testified that Partners Consulting does not control the site content and to his knowledge the content is controlled by HISNA. Docket No. 202-7 at 28:6–8, 30:17–31, 37:11–21, 61:21–62:7, 65:1–11, 66:17–20. Thus, CWC presented evidence from the company that hosts the website that the website content is provided by HISNA and from HISNA employees that the content is actually provided and controlled by HMA.

To defeat CWC's summary judgment argument, HMA contends that CWC has not shown a contractual or agency relationship between HMA and Partners Consulting or Akamai. To support its agency requirement, HMA relies on *Akamai Technologies, Inc. v. Limelight Networks, Inc.*, 629 F.3d 1311, 1318–1320 (holding that "there can only be joint infringement when there is an agency relationship between the parties who perform the method steps or when one party is contractually obligated to the other to perform the steps."). However, the Federal Circuit vacated the *Akamai* decision and granted rehearing en banc.[5] *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 2011 WL 1518909 (Fed. Cir. April 20, 2011).

With the *Akamai* opinion vacated, there is no requirement at this time for a contractual or agency relationship for a finding of vicarious liability. Rather, control or direction of each step of the patented process is required. *BMC Res.*, 498 F.3d at 1380. "A party cannot avoid infringement, however, simply by contracting out steps of a patented process to another entity. In those cases, the

---

[5] The Federal Circuit also ordered the parties to brief the following issue: "[i]f separate entities each perform separate steps of a method claim, under what circumstances would that claim be directly infringed and to what extent would each of the parties be liable?"

party in control would be liable for direct infringement. It would be unfair indeed for the mastermind in such situations to escape liability." *Id.* at 1381. Although *BMC Resources* was a method claims case, *Centillion Data Systems, LLC v. Qwest Communications Int'l, Inc.*, 631 F.3d 1279 (Fed. Cir. 2011), applied vicarious liability to system claims. The Federal Circuit held that the defendant could be held liable if the plaintiff could establish that the third party's use of the system was attributable to the defendant. *Id.* at 1286.

HMA's only remaining factual argument is that Partners Consulting has "discretion" to "configure and monitor the websites in a way that optimizes the function of the servers." HMA's MSJ Brief, Docket No. 192 at 7 (citing Ex. E, Cisneros Dep. 52:5–9, 53:15–19, 75:22–76:22). This argument does not controvert CWC's position that HMA controls the content of the website. HMA has failed to explain how optimizing the functions of the servers is at all relevant to infringement.

CWC has shown that any infringing acts by the website hosts are done under HMA's immediate direction and control. HMA has not raised a genuine issue of material fact that any allegedly infringing act is performed outside or beyond HMA's control. HMA cannot avoid infringement by contracting out the infringing acts. *See BMC Res.*, 498 F.3d at 1381. Accordingly, the Court grants summary judgment in favor of CWC on this issue.

## CONCLUSION

As explained, the Court **DENIED** HMA's motion for summary judgment and **GRANTED** CWC's cross motion. This ruling in no way relieves CWC from proving HMA practices each claim element, but does prevent HMA from arguing that it does not practice a claim element because that element is met by a user or third-party website hosting company.

**So ORDERED and SIGNED this 14th day of June, 2011.**

_____
**LEONARD DAVIS
UNITED STATES DISTRICT JUDGE**