**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| **CLEAR WITH COMPUTERS, LLC,** | § | |
| | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **CASE NO. 6:09-CV-479** |
| | § | |
| **HYUNDAI MOTOR AMERICA, INC.,** | § | |
| | § | |
| **Defendant.** | § | |
| | § | |

**MEMORANDUM OPINION AND ORDER**

The following motions are before the Court:

- Hyundai Motor America's Motion for Judgment as a Matter of Law, or, in the Alternative, a New Trial on the Issue of Non-Infringement (Docket No. 377);

- Hyundai Motor America's Motion for Judgment as a Matter of Law, or, in the Alternative, a New Trial on the Issue of Invalidity (Docket No. 378);

- Hyundai Motor America's Motion for Judgment as a Matter of Law on Damages, or, Alternatively for Remittitur or a New Trial (Docket No. 379);

- CWC's Post-Trial Motion for: (1) Postverdict Supplemental Damages; (2) Prejudgment Interest (Unopposed); (3) Permanent Injunction, or Alternatively, Ongoing Royalty; & (4) Judgment on Partial Findings on HMA's Affirmative Defense of Collateral Estoppel (Docket No. 380); and

- CWC's Motion to Strike HMA's Reliance on Exhibit Not Admitted into Evidence in Its Revised Proposed Findings of Fact and Conclusions of Law (Docket No. 388).

For the reasons stated below, Hyundai Motor America's Motion for Judgment as a Matter of Law, or, in the Alternative, a New Trial on the Issue of Non-Infringement is **DENIED**. Hyundai

Motor America's Motion for Judgment as a Matter of Law, or, in the Alternative, a New Trial on the Issue of Invalidity is **DENIED**. Hyundai Motor America's Motion for Judgment as a Matter of Law on Damages, or, Alternatively for Remittitur or a New Trial is **DENIED**. CWC's Post-Trial Motion for: (1) Postverdict Supplemental Damages; (2) Prejudgment Interest (Unopposed); (3) Permanent Injunction, or Alternatively, Ongoing Royalty; & (4) Judgment on Partial Findings on HMA's Affirmative Defense of Collateral Estoppel is **GRANTED IN PART** and **DENIED IN PART**. CWC's Motion to Strike HMA's Reliance on Exhibit Not Admitted into Evidence in Its Revised Proposed Findings of Fact and Conclusions of Law is **DENIED**.

## BACKGROUND

On October 20, 2009, Clear With Computers, LLC ("CWC") filed this action against Hyundai Motor America, Inc. ("HMA") alleging that HMA infringed U.S. Patent No. 7,606,739 ("the '739 patent"). The '739 patent, which issued on October 20, 2009, describes an electronic proposal preparation system that creates customized product proposals for customers. The proposals are customized according to a customer's needs and interests as determined by queries.

These same parties have engaged in prior litigation regarding U.S. Patent Nos. 5,367,627 ("the '627 patent") and 5,615,342 ("the '342 patent"). *See Orion IP LLC v. Mercedes-Benz USA, LLC*, 6:05-cv-322, 2008 U.S. Dist. LEXIS 103607 (E.D. Tex. Dec. 22, 2008). There, Orion IP, LLC[1] alleged that HMA infringed both the '627 and the '342 patents. A jury found that HMA had infringed the '627 patent but had not infringed the '342 patent.[2] HMA alleges that the finding of no infringement regarding the '342 patent precludes CWC's claims in the instant suit.

A jury trial regarding the instant suit commenced on June 14, 2011. At trial, CWC contended that HMA infringed claims 1, 8, 11, and 18 of the '739 patent. In response, HMA

---

[1] CWC previously operated as Orion IP, LLC.
[2] The infringement judgment regarding the '627 patent was vacated because the Federal Circuit held that the '627 patent was anticipated. *Orion IP, LLC v. Hyundai Motor America*, 605 F.3d 967, 979 (Fed. Cir. 2010).

asserted that its website did not infringe the patent and that the patent was invalid. Following a four-day trial, the jury returned a verdict that the '739 patent was not invalid and was infringed by HMA. The jury awarded CWC damages in the form of a running royalty totaling $11,575,579.68.

## HMA'S MOTIONS FOR JUDGMENT AS A MATTER OF LAW REGARDING NON-INFRINGEMENT, INVALIDITY, OR DAMAGES

HMA challenges the jury's verdict with three motions for judgment as a matter of law. First, HMA moves for judgment as a matter of law based on non-infringement of the '739 patent. Alternatively, this motion seeks a new trial on the basis that the verdict is against the great weight of the evidence. Second, HMA moves for judgment as a matter of law based on invalidity. Again, HMA alternatively seeks a new trial for the same reason—that the verdict is against the great weight of the evidence. Lastly, HMA moves for judgment as a matter of law that the damages awarded have no evidentiary support, or alternatively for a remittitur to a lump sum between $200,000 and $590,000.

### *Judgment as a Matter of Law, New Trial, and Remittitur Standards*

"The grant or denial of a motion for judgment as a matter of law is a procedural issue not unique to patent law, reviewed under the law of the regional circuit in which the appeal from the district court would usually lie." *Summit Tech. Inc. v. Nidek Co.*, 363 F.3d 1219, 1223 (Fed. Cir. 2004). In the Fifth Circuit, judgment as a matter of law may not be granted unless "there is no legally sufficient evidentiary basis for a reasonable jury to find as the jury did." *Hiltgen v. Sumrall*, 47 F.3d 695, 700 (5th Cir.1995) (quoting FED. R. CIV. P. 50(a)(1)) (internal quotation marks omitted). A court reviews all the evidence in the record and must draw all reasonable inferences in favor of the nonmoving party; however, a court may not make credibility

determinations or weigh the evidence, as those are solely functions of the jury. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).

Under Federal Rule of Civil Procedure 59, a new trial may be granted to any party to a jury trial on any or all issues "for any reason for which a new trial has heretofore been granted in an action at law in federal court." "A new trial may be granted, for example, if the district court finds the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course." *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 612–13 (5th Cir. 1985).

Remittitur is within the sound discretion of the trial court and is only appropriate when the damages verdict is "clearly excessive." *See Alameda Films S.A. v. Authors Rights Restoration Corp.*, 331 F.3d 472, 482 (5th Cir. 2003).

### *Non-Infringement*

HMA moves for judgment as a matter of law on non-infringement based on: (1) the limitation requiring a selected environment to be of particular interest to the customer; (2) the limitation requiring the environment and product images to be separately selected and that the product be displayed in the selected environment; (3) consideration of improper evidence; and (4) failure to show that each and every step of the claimed method was performed by HMA.

Claim 1 of the '739 patent provides:

A computer program product readable by a computing system comprising instructions that when executed cause a processor to:

receive answers to a plurality of questions from a specific customer related to at least one of a desired feature and desired use by the customer of a tangible product for sale from a user interface;

automatically select, in response to at least one of the received answers, an image of the tangible product for sale, an image of an environment in which the product for sale is to be used and a text segment comprised of a description of

the product specifications and performances that are of particular interest to the customer; and

integrate the selected images and the selected text segment into a proposal for the sale of the product customized to the specific customer such that a single composite visual output can be generated that shows the product in the product environment along with said text segment,

wherein the single composite visual output is generated by:

a selection device operatively interconnected to an active database, the active database configured to electronically store customer information obtained via the user interface;

the selection device operatively connected to a static database, the static database storing electronically at least one of, (a) text; (b) pictures or (c) texts and pictures, relating to at least one product; and

the system dynamically building a template utilizing the selection device to fill in the template to produce the single composite visual output.[3]

The particular interest limitation requires that the selected environment in which a product is displayed be "of particular interest to the customer." HMA argues that the environment images displayed on its landing pages are generic and not of particular interest to the customer. CWC's expert, Dr. Rhyne, presented evidence that different environment images are selected in response to feedback from the user. *See* Trial Tr. 6/14/11 PM, at 73:22–75:2, 76:1–6. For instance, a user selecting a crossover vehicle would see that product depicted in a semi-rugged environment, while a user selecting a hybrid would see that product displayed in a "green" environment. Based on this evidence, a reasonable jury could conclude that the selected environment was "of particular interest to the customer."

Next, HMA argues that the separately selected images (product and environment) are not integrated into a proposal—and ultimately a composite visual output—as required by the claim language. HMA alleges that the images that are integrated into the proposal must necessarily be

---

[3] Claim 1 is exemplary for the purpose of HMA's arguments; these arguments also apply to claim 11.

the same images separately selected. Dr. Rhyne's testimony showed that two images were separately selected, one containing a product and the other containing an environment. *See* Trial Tr. 6/14/11 PM, at 78:5–79:6. HMA contends that these images are insufficient to meet the separately selected limitation because both images contain a product and an environment. However, the claim language only requires separate selection of a product image and an environment image; the claims are silent regarding whether the selected images may contain additional subjects. *See* '739 Patent col. 39:26–32, 40:38–44. Finally, CWC presented evidence that the selected product and environment images were used for a composite proposal via the vehicle landing pages on the HMA website. *See* Docket No. 390, at 11 (citing Pl.'s Ex. 12). It is not required, as HMA implicitly argues, that the composite image be a superimposition of the two separately selected images. *See Markman* Opinion, Docket No. 143, at 10 ("A superimposed image is one way to create a 'composite' visual output, but 'composite' is much broader than 'superimposed.'"). Thus, a reasonable jury could find that the separately selected limitations were met per Dr. Rhyne's testimony and that the vehicle landing pages presented at trial were sufficient to meet the composite output limitation.

HMA's third argument regarding non-infringement is that the "active database" recited in Claim 1 must generate the "single composite video output" and that CWC failed to present evidence that HMA's website met this limitation. CWC responds that the claims impose no such limitation. Rather, claim 1 states that the "single composite video output is generated by: a selection device operatively interconnected to an active database, the active database configured to electronically store customer information obtained via the user interface . . . ." '739 Patent col. 39:38–42. Thus, CWC reads the claim to require: (1) that the video output be generated by the selection device; (2) that the selection device be operatively connected to an active database; and

(3) that the active database be capable of storing customer information obtained from the user interface. CWC presented evidence at trial—Dr. Rhyne's testimony—that HMA's website configuration met the claim limitations relating to the selection device and active database. *See* Trial Tr. 6/14/11 PM, at 102:16–106:19. Claim 1 does not require that the active database generate the composite video output; the claim only requires the active database to be operatively connected to the selection device. '739 Patent col. 39:38–42. CWC presented evidence such that a reasonable jury could find that HMA's website met these limitations of claim 1.

HMA's final argument pertaining to non-infringement is that CWC did not present evidence that every step of the method claims was performed by HMA's accused web servers. Before trial, the Court granted CWC's cross-motion of no divided infringement and noted that this "prevent[ed] HMA from arguing that it does not practice a claim element because that element is met by a user or a third-party website hosting company." Docket No. 332, at 8. HMA's argument now focuses on the "separately selecting" element of the claims, an element not explicitly addressed by the Court's earlier summary judgment ruling. Disregarding the Court's ruling, HMA still argues that the code responsible for "separately selecting" is "performed by the non-accused user's computer." Docket No. 377, at 14. In light of the Court's earlier ruling, HMA's argument regarding divided infringement is precluded. Even so, CWC presented ample evidence such that a reasonable jury could find that HMA's servers performed the "separately selecting" element. *See* Trial Tr. 6/14/11 PM, at 113:17–115:4 (noting that all web pages, including their code and HTML, are generated by the HMA servers). Accordingly, HMA's final argument regarding non-infringement is insufficient, and HMA's motion for judgment as a matter of law of non-infringement is **DENIED**.

*Invalidity*

HMA moves for judgment as a matter of law on invalidity based on three references—the Detailer, Buick, and Ford Selection Center references—and lack of written description under 35 U.S.C. § 112. Regarding the three references, HMA's basic argument is that the overwhelming evidence showed that the "automatically selecting," "single composite visual output," "selection device," and "dynamically building a template" limitations of claim 1 were either obvious or anticipated. For each reference and limitation, HMA presented evidence at trial that the asserted claim was either anticipated or obvious. *See, e.g.*, Trial Tr. 6/16/11 AM, at 93:8–116:18 (expert testimony of Ms. Frederiksen-Cross showing that the Detailer reference anticipates the '739 patent and meets the limitations of the claims-at-issue); *id.* at 116:19–130:2 (expert testimony of Ms. Frederiksen-Cross showing that the '739 patent is obvious in light of the Buick reference); Trial Tr. 6/15/11 PM, at 81:3–112:2 (expert testimony of Mr. Tancill explaining how the Ford Selection Center anticipates the '739 patent); Trial Tr. 6/16/11 PM, pt. 1, at 6:14–9:11 (expert testimony of Ms. Frederiksen-Cross explaining that the source code for the Ford Selection Center reference performs important steps of the claims-at-issue). However, CWC also presented evidence at trial to rebut the invalidity contentions regarding all three references. *See, e.g.*, Trial Tr. 6/16/11 PM, pt. 2, at 38:3–55:7 (expert testimony of Dr. Rhyne discussing the limitations of the claims-at-issue that are absent from the Detailer, Buick, and Ford Selection Center references); *id.* at 55:12–56:9 (expert testimony of Dr. Rhyne detailing why the '739 patent is not obvious in light of the prior art references).

The same is true for HMA's brief written description argument. HMA presented the testimony of Ms. Frederiksen-Cross to show that the step of "utilizing the selection device to fill in the template to produce the single composite visual output" is not sufficiently described in the specification. *See* Docket No. 378, at 15. CWC rebutted this evidence with the testimony of Dr.

Rhyne, who claimed that the some of the forty-two figures in the patent and their corresponding descriptions in the specification address the selection device. *See* Docket No. 394, at 13. The jury heard and weighed the evidence presented by both sides at trial and found that the asserted claims were not invalid. After review of the parties' arguments and evidence in support of those arguments, the Court finds that HMA has failed to present clear and convincing evidence that a reasonable juror could not have upheld the validity of the asserted claims. Thus, HMA's motion for judgment as a matter of law of invalidity is **DENIED**.

### *Damages and Remittitur*

In its third motion for judgment as a matter of law, HMA argues that the damages award should be eliminated or reduced because: (1) CWC's experts relied on an unaccepted methodology for assessing damages; (2) CWC failed to tie its cost-per-click royalty rate to the patented technology; (3) CWC's royalty rate included two improper categories; and (4) CWC's experts did not use adequate controls in their methods, leading to inconsistent results and unreliable conclusions.

HMA's first argument regarding the methodology employed by CWC's experts, Mr. Bersin and Dr. Chiagouris, is essentially a *Daubert* attack on the admissibility of their testimony. Bersin, a Certified Public Accountant with a bachelors in business administration and finance, has approximately seventeen years of experience valuing intellectual property. Trial Tr. 6/15/11 AM, at 85:15–20. He testified that the theories and methodologies he used to establish a royalty base concerning HMA's alleged infringement of CWC's patented technology were "sound and reasonable and well-documented [in] authoritative treatises . . . ." *Id.* at 141:8–19. HMA further attacks Bersin's testimony because he relied, in part, on Chiagouris's analysis of the marketing value of HMA's allegedly infringing vehicle landing pages. Chiagouris has a Ph.D. in business with a specialization in marketing and consumer behavior, and he has approximately seventeen

years of experience providing marketing-focused consulting for commercial clients. *Id.* at 23:10–24. Using his marketing expertise and data provided by HMA, Chiagouris assessed the effectiveness and value of HMA's vehicle landing pages to its overall marketing efforts. *See id.* at 41:9–19 (stating his conclusions regarding the effectiveness of the vehicle landing pages); *id.* at 69:19–70:23 (noting that the HMA web-tracking data provided was more reliable for marketing analysis than surveys). Bersin and Chiagouris both have appropriate credentials and prior experience in their respective fields. Further, both testified that they employed generally accepted methodologies in their analysis. Accordingly, the Court finds that their methodologies were generally accepted in their respective fields of practice, and their expert testimony is both relevant and reliable.

HMA next attacks the royalty rate of $0.56 per infringing click awarded by the jury, arguing that the evidence supporting this rate was not tied to the technology of the patent. CWC's experts presented evidence of how much HMA had been willing to pay per click to attract customers to its website; these rates ranged from $5.28 to $0.29 per click. *See* Trial Tr. 6/15/11 AM, 116:1–118:21. CWC's damages argument used a purchase or sales "funnel" approach[4] that has been adopted by HMA. *See* Docket No. 391, at 8 n.4 (describing statements made by HMA marketing executives and marketing materials that illustrate HMA's use of the purchase funnel model). Namely, CWC argued that because HMA has paid these rates to attract users to the entry-level of their website, they would likely pay at least that much to attract engaged users to a more tailored section of their site that is further down the funnel. The vehicle landing pages present product information to a consumer in response to certain queries, thus

---

[4] The funnel approach recognizes that once consumers are made aware of a product, some will fall away while others will pursue further information about the product. Those seeking further information about the product become more engaged and are more likely to ultimately purchase the product. Thus, the farther down the funnel or more engaged a consumer is regarding a product, the more valuable they are as a potential customer.

tailoring the information better to the customer's interests. This customized presentation of information serves to engage the customer at a deeper level than one simply visiting the HMA website homepage.

HMA responds that the comparison of search engine hit rates (what HMA pays per click to have customers directed to its website from search engines) to the amount HMA would pay for "software to power a particular functionality of its own website" is an apples to oranges comparison. However, this is not how CWC's experts framed the issue for jury consideration. Rather, CWC compared the rate HMA would pay to direct consumers to its website to the rate it would pay to direct more engaged consumers to its website. And, CWC's analysis employed the same purchase or sales funnel marketing models that HMA has employed internally. *See* Docket No. 391, at 8 & n.4 (describing HMA's use of the purchase or sales funnel in its marketing efforts). Accordingly, there is substantial evidence in the record to support the jury's royalty rate of $0.56 per click.

HMA's third argument regarding damages is that CWC's royalty base included two categories of non-infringing use: (1) HMA website users who did not go beyond the vehicle landing pages; and (2) HMA website users who arrived at the vehicle landing pages via "one-click" from an external site (i.e., a search engine advertisement). Whether certain uses of the HMA website read on the claims at issue was a question of fact for the jury. Evidence was presented at trial to support CWC's argument that HMA infringed when a user arrived at a vehicle landing page, even if he did not further explore. *See, e.g.*, Trial Tr. 6/16/11 PM, pt. 2, at 49:6–50:1. Thus, HMA's first point is unavailing. HMA's second point regarding "one-click" users is also unavailing because it was precluded by the Court's earlier ruling on CWC's Motion to Strike HMA's New Non-Infringement Theory. *See* Docket No. 373, at 3 ("Having chosen not

to disclose this [one-click] theory that it has been aware of for several months, HMA is therefore precluded from using the theory at trial.").

Finally, HMA argues that the damages award is improper because CWC's experts failed to use adequate controls in the methods they applied. HMA first argues that Bersin should have used surveys as he typically does in his academic work. As mentioned earlier, Bersin's approach was justified because he had behavioral data (website logs) from HMA, which provides more reliable information than can be obtained from surveys.

HMA further argues that CWC's experts ignored data that was inconsistent with their theories, particularly the six lump-sum licensing agreements negotiated between HMA and third parties regarding the '739 patent. First, Mr. Spangenberg negotiated many of these agreements, and he testified that validity and infringement were disputed in almost all of them. Trial Tr. 6/14/11 PM, at 13:20–15:1. In contrast, the hypothetical negotiation "assumes that the asserted patent claims are valid and infringed." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1325 (Fed. Cir. 2009). Second, Spangenberg noted that some agreements included other considerations not present in the instant case. Trial Tr. 6/14/11 PM, at 25:25–26:7, 33:11–34:5. For instance, one agreement involved a third-party that conducted only a few sales via the web. Instead, most sales were to the government, and thus exempt. Docket No. 391, at 16 n.14. Another third-party assigned its rights to certain patents in addition to the lump-sum monetary payment. *Id.* CWC's expert testified that he considered and reviewed all of the licensing agreements; however, he did not feel that they provided information that was useful to the parties in conducting a hypothetical negotiation. Trial Tr. 6/15/11 PM, at 17:1–23. The jury heard arguments and evidence from both sides. HMA cannot dictate that the jury accord more weight to one side's evidence than the other's. HMA's judgment as a matter of law on damages can only

be granted if there was insufficient evidence to support the jury's damages award. Here, there was sufficient evidence to support the damages award. Therefore, HMA's motion for judgment as a matter of law regarding damages is **DENIED**. For the same reasons, the Court also finds that the jury's award is not "clearly excessive" and **DENIES** HMA's motion for remittitur.

*New Trial*

In the alternative, HMA cursorily asks for a new trial in both the non-infringement and invalidity motions for judgment as a matter of law because the verdict is against the great weight of the evidence. However, as discussed previously, the jury heard evidence from both parties on these issues and arrived at a verdict that is supported by the evidence. Therefore, a new trial is not warranted and HMA's motions for new trial are **DENIED**.

### CWC'S POST-TRIAL MOTIONS

CWC's first motion seeks: (1) postverdict supplemental damages; (2) prejudgment interest; (3) an injunction, or alternatively, an ongoing royalty; and (4) judgment on partial findings regarding HMA's defense of collateral estoppel. CWC's second motion seeks to strike HMA's reliance on trial transcripts from a prior litigation in its proposed findings of fact and conclusions of law. For the reasons set forth below, CWC's first motion is **GRANTED IN PART** and **DENIED IN PART**, and CWC's second motion is **DENIED**.

***CWC's Post-Trial Motion for: (1) Postverdict Supplemental Damages; (2) Prejudgment Interest (Unopposed); (3) Permanent Injunction, or Alternatively, Ongoing Royalty; and (4) Judgment on Partial Findings on HMA's Affirmative Defense of Collateral Estoppel***

*Postverdict Supplemental Damages*

CWC claims that it is entitled to postverdict supplemental damages covering the period after the jury's verdict up to the entry of final judgment. The verdict was entered on June 17, 2011, and covered damages through June 13, 2011. Docket No. 345. CWC presents an affidavit by its damages expert approximating postverdict damages through August 31, 2011, to be

$1,654,178, or $20,939 per day. *See* Docket No. 402, Attach. 1, at 4–5. These estimates are based on updated information from HMA regarding the number of infringing visits between October 20, 2009 and June 17, 2011.

HMA responds, in accordance with its motion for judgment as a matter of law on damages, that supplemental damages are improper because a running royalty is improper. The Court has already rejected HMA's argument that the jury's award of a running royalty is unsupported by the evidence. Thus, the Court **GRANTS** CWC's motion as to supplemental damages in the amount of $1,654,178 through August 31, 2011, and $20,939 per day thereafter.

*Prejudgment Interest*

CWC also seeks prejudgment interest, per 35 U.S.C. § 284, on its damages award. HMA agrees that prejudgment interest at the prime rate, compounded quarterly, is appropriate on any surviving damages award. Accordingly, the Court **GRANTS** CWC's motion as to prejudgment interest. Interest shall be calculated at the prime rate and compounded quarterly.

*Permanent Injunction or Ongoing Royalty*

CWC seeks to permanently enjoin HMA from infringing the '739 patent, or alternatively, to receive an ongoing royalty for such infringement. The decision to grant or deny injunctive relief is within the district court's discretion, which should be exercised consistent with traditional principles of equity. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 394 (2006). A party seeking a permanent injunction "must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the [parties], a remedy in equity is warranted; and 4) that the public interest would not be disserved by a permanent injunction." *Id.* at 391. CWC has failed to show that it is entitled to injunctive relief; however, CWC is entitled to ongoing royalties.

CWC argues that it is irreparably harmed because it cannot exclude HMA from practicing the '739 patent. This alone is insufficient to show irreparable harm. *See Robert Bosch LLC v. Pylon Mfg. Corp.*, 2011 U.S. App. LEXIS 20700, at *14–15 (Fed. Cir. Oct. 13, 2011) ("*eBay* jettisoned the presumption of irreparable harm as it applies to determining the appropriateness of injunctive relief."). HMA notes that CWC does not practice the invention, does not compete with HMA, licenses the invention on a nonexclusive basis, and has shown no loss of goodwill or brand recognition due to HMA's continued infringement. Thus, this factor does not support injunctive relief.

CWC next claims that monetary damages are inadequate because they rely on stale sales data and HMA's nature of infringement may change. However, due to CWC's business model as a licensing entity, monetary damages are particularly appropriate. This is supported by the fact that CWC has several existing licenses for the '739 patent. This factor does not favor injunctive relief.

Regarding the balance of hardships factor, CWC argues that HMA can respond to injunctive relief by implementing the noninfringing alternatives presented at trial. CWC claims that it will be unable to obtain relief absent an injunction. As a final point, CWC acknowledges that the '739 patent will likely expire within a year and that, in light of this, an ongoing royalty may be more appropriate than an injunction. Given the short remaining lifespan of the '739 patent, it presents an undue hardship on HMA to require it to implement non-infringing alternatives. Even CWC acknowledges such with its admission that an ongoing royalty may be more appropriate in light of the imminent expiration of the '739 patent. Accordingly, this factor does not favor injunctive relief.

CWC's only argument regarding the public interest factor—that the public has a significant interest in protecting patent rights—is not convincing. That argument could be made for any request for injunctive relief in a patent infringement case.

CWC has failed to show that it is entitled to injunctive relief under the *eBay* factors. Thus, CWC's motion for a permanent injunction is **DENIED**. However, CWC is entitled to an ongoing royalty of $20,939 per day for the remaining life of the '739 patent, so long as HMA's infringement continues. CWC's motion for an ongoing royalty is **GRANTED**.

*Collateral Estoppel*

CWC also moves for a judgment on partial findings under Federal Rule of Civil Procedure 52(c) regarding HMA's defense of collateral estoppel. Because the Court is required to present findings of fact and conclusions of law regarding the bench issue of collateral estoppel under Federal Rule of Civil Procedure 52(a), CWC's motion is **DENIED AS MOOT**. The Court's Findings of Fact and Conclusions of Law regarding collateral estoppel follow.

The '739 patent, entitled "Electronic Proposal Preparation System," issued on October 20, 2009, and is directed to an electronic system for creating customized product proposals. The '739 patent resulted from U.S. Patent Application No. 09/566,029, which was a continuation of U.S. Patent Application No. 08/823,534 ("the '534 application"). Though the '534 application was abandoned, it was a continuation of U.S. Patent Application No. 08/596,575, which resulted in the '342 patent that was at issue in the *Orion IP* litigation. *See Orion IP LLC*, 2008 U.S. Dist. LEXIS 103607. The '342 patent is the grandparent of the '739 patent, and the patents share an identical specification, the same inventor, and similar claims.

*Orion IP* involved CWC (formerly known as Orion IP LLC) and HMA. The jury found no infringement by HMA as to claims 1 and 11 of the '342 patent. The verdict form did not

require the jury to identify which specific claim element or elements the jury found not present in

the accused product. Claim 1 of the '342 patent provides:

> A computer assisted method of generating a customized proposal for selling products to particular customers, the method comprising the steps of:
>
> presenting to a user of the computer a plurality of questions relating to features and uses of the products;
>
> inputting into the computer a plurality of customer answers to the questions, the answers specifying a customer's desired product features and uses;
>
> storing in the computer product pictures, product environment pictures and text segments;
>
> selecting a particular product picture in response to at least one of the customer answers;
>
> selecting a particular product environment picture in response to at least one of the customer answers;
>
> selecting a particular text segment in response to at least one of the customer answers; and
>
> generating a customized proposal for the customer using the particular product picture, the particular product environment picture and the particular text segment.

Claim 11 of the '342 patent provides:

> A computer assisted method of generating a customized proposal for a customer to facilitate a sale of a product, the computer storing product images, product environment images and text segments, the method comprising the steps of:
>
> prompting a user of the computer with a plurality of questions related to at least one of a desired feature and desired use of the product;
>
> receiving into the computer customer answers of the customer to the plurality of questions;
>
> automatically selecting, in response to at least one of the customer answers, a product image, a product environment image and a text segment; and
>
> generating a proposal customized for the customer using the selected product image, the selected product environment image and the selected text segment.

In the instant litigation, CWC has asserted that HMA infringed claims 1 and 11 of the

'739 patent. Claim 1 of the '739 patent provides:

> A computer program product readable by a computing system comprising instructions that when executed cause a processor to:
>
> receive answers to a plurality of questions from a specific customer related to at least one of a desired feature and desired use by the customer of a tangible product for sale from a user interface;
>
> automatically select, in response to at least one of the received answers, an image of the tangible product for sale, an image of an environment in which the product for sale is to be used and a text segment comprised of a description of the product specifications and performances that are of particular interest to the customer; and
>
> integrate the selected images and the selected text segment into a proposal for the sale of the product customized to the specific customer such that a single composite visual output can be generated that shows the product in the product environment along with said text segment,
>
> wherein the single composite visual output is generated by:
>
> a selection device operatively interconnected to an active database, the active database configured to electronically store customer information obtained via the user interface;
>
> the selection device operatively connected to a static database, the static database storing electronically at least one of, (a) text; (b) pictures or (c) texts and pictures, relating to at least one product; and
>
> the system dynamically building a template utilizing the selection device to fill in the template to produce the single composite visual output.

Claim 11 of the '739 patent provides:

> A method of generating a customized visual output with a computer system to facilitate a sale of a tangible product, the method comprising:
>
> receiving from a user interface into the computer system answers to a plurality of questions from a specific customer related to at least one of a desired feature and desired use by the customer of the tangible product for sale;

automatically selecting by the computer system, in response to at least one of the
received answers, an image of a tangible product for sale, an image of an
environment in which the product for sale is to be used and a text segment
comprised of a description of the product specifications and performances that
are of particular interest to the customer; and

integrating the selected images and selected text segment into a proposal for the
sale of the product customized to the specific customer such that a single
composite customized visual output showing the product in the product
environment along with said text segment,

wherein the single composite visual output is generated by:

a selection device operatively interconnected to an active database, the active
database configured to electronically store customer information obtained via
the user interface;

the selection device operatively connected to a static database, the static database
electronically storing at least one of, (a) text, (b) pictures or (c) text and
pictures, relating to at least one product; and

the system dynamically building a template utilizing the selection device to fill in
the template to produce the customized visual output.

Claims 1 and 11 of the '342 patent respectively include "presenting to a user of the
computer a plurality of questions " and "prompting a user of the computer with a plurality of
questions" as elements. Neither of these elements are present in claims 1 or 11 of the '739 patent.
Thus, claims 1 and 11 of the '739 patent are broader, in some respects, than claims 1 and 11 of
the '342 patent.

Collateral estoppel is not an issue unique to patent law, thus the law of the regional
circuit applies. *See Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 435 F.3d 1356, 1359–60
(Fed. Cir. 2006). "[C]ollateral estoppel is appropriate when: (1) the identical issue was
previously adjudicated; (2) the issue was actually litigated; and (3) the previous determination
was necessary to the decisions." *Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 290 (5th Cir.
2005).

HMA has not satisfied the first element of collateral estoppel that the identical issue was previously adjudicated. As explained earlier, the asserted '739 patent claims are broader than the '342 patent claims addressed in the prior litigation. This, alone, precludes a finding of collateral estoppel. The jury in the previous case did not detail the basis for their finding of no infringement. They may have relied only upon the elements present in the '342 claims that are not present in the '739 claims. Accordingly, CWC's allegations in the instant litigation regarding the '739 patent are not precluded due to the *Orion IP* litigation.

### CWC's Motion to Strike HMA's Reliance on Exhibit Not Admitted into Evidence in Its Revised Proposed Findings of Fact and Conclusions of Law

In its motion to strike, CWC alleges that HMA improperly relied on evidence not admitted during the jury trial in its proposed findings of fact and conclusions of law regarding the affirmative defense of collateral estoppel. The evidence at issue is an excerpt from the trial transcript of the *Orion IP* matter, a previous case involving both CWC (as a different entity) and HMA. *See Orion IP LLC*, 2008 U.S. Dist. LEXIS 103607. HMA responds that the court should take judicial notice of the transcript evidence.

"A court may take judicial notice of the record in prior related proceedings and draw reasonable inferences therefrom." *CitiFinancial Corp. v. Harrison*, 453 F.3d 245, 249 n.3 (5th Cir. 2006) (quoting *Missionary Baptist Found. of Am. v. Huffman*, 712 F.2d 206, 211 (5th Cir. 1983)). *Orion IP* involved related patents and both HMA and CWC were parties in the litigation. Thus, neither party is prejudiced by the admission of this evidence as it pertains to the issue of collateral estoppel, which is solely determined by the bench. Accordingly, the Court takes judicial notice of the *Orion IP* proceedings and **DENIES** CWC's motion to strike.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW AS TO INDEFININTENESS

HMA's proposed findings of fact and conclusions of law also address their allegations that the '739 patent is invalid for indefiniteness. *See* Docket No. 376, at 10–17. As part of its claim construction ruling, the Court has already denied HMA's motion for summary judgment on this issue. *See* Docket No. 143. The Court hereby incorporates the findings of fact and conclusions of law as stated in its earlier *Markman* Order, Docket No. 143. The term "selection device" is not a means-plus-function term, thus the '739 patent is not indefinite for failure to recite sufficient structure of the "selection device to fill in the template."

### CONCLUSION

The Court **DENIES** HMA's three motions for judgment as a matter of law. CWC's motion regarding damages and partial findings is **GRANTED IN PART** and **DENIED IN PART**. The motion is **GRANTED** as to supplemental damages, prejudgment interest, and an ongoing royalty; however, the motion is **DENIED AS MOOT** as to the request for partial findings under Rule 52(c). Finally, CWC's motion to strike is **DENIED**.

Regarding the bench issues of collateral estoppel and indefiniteness, the Court holds that the *Orion IP* litigation does not preclude the relief sought by CWC in this matter. Additionally, the '739 patent is not invalid for indefiniteness.

**So ORDERED and SIGNED this 9th day of January, 2012.**



_____
**LEONARD DAVIS**
**UNITED STATES DISTRICT JUDGE**